**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**WILLIAM LAMONTAGNE,**

    **Plaintiff,**

v.                                                                  Case No:

**FREEDOM MORTGAGE
CORPORATION,**

    **DEMAND FOR JURY TRIAL**

    **Defendant.**
_____/

**PLAINTIFF'S COMPLAINT WITH INJUNCTIVE RELIEF SOUGHT**

**COMES NOW**, Plaintiff, **WILLIAM LAMONTAGNE** ("Mr. Lamontagne" or "Plaintiff"), by and through the undersigned counsel, and hereby files this Fist Amended Complaint and Demand for Jury Trial against Defendant, **FREEDOM MORTGAGE CORPORATION** ("Defendant"), and in support thereof states as follows:

*Introduction*

1. This action arises out of Defendant's knowing and willful violations of the and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.* ("TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 *et. seq.* ("FCCPA"), in attempting to collect such alleged Debt by:

    i. using an automatic telephone dialing system, automated voice, or prerecorded message to place an excessive number of calls to Mr. Lamontagne's cellular telephone after Mr. Lamontagne demanded that Defendant stop calling his cellular telephone;

    ii.    willfully communicating inaccurate negative credit reporting information regarding Mr. Lamontagne and the subject account to the credit reporting agencies after Defendant had confirmed that it would not continue its inaccurate reporting;

    iii.    mailing numerous collection letters directly to Mr. Lamontagne that materially misrepresented the amount of the alleged debt, which can all reasonably be expected to harass Mr. Lamontagne; and

    iv.    misrepresenting the legal right to charge Mr. Lamontagne late fees when Defendant knew the subject account was not delinquent.

### *Jurisdiction and Venue*

2. This Court has subject matter jurisdiction over the instant case arising under the federal question presented in the TCPA pursuant to 28 U.S.C. § 1331.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391 (b) and Fla. Stat. § 559.77 (1), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### *Parties*

4. Plaintiff, Mr. Lamontagne, was and is a natural person and, at all times material hereto, is an adult, a resident of Pinellas County, Florida, and a "debtor" or "consumer" as defined by Fla. Stat. § 559.55 (8).

5. At all times material hereto, Defendant was and is a corporation with its principle place of business in the State of New Jersey, and its registered agent, CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

## *Statements of Fact*

6. On March 3, 2017, Mr. Lamontagne executed and delivered a note and mortgage (collectively "Mortgage") in favor of Freedom Mortgage Corporation, a Corporation secured by Mr. Lamontagne's personal residence located at 2299 Richter St., Dunedin, FL 34698 ("Property").

7. Defendant is and has been the servicer of the Mortgage since that time.

8. Sometime thereafter, Mr. Lamontagne fell behind on his payments towards the Mortgage and incurred and outstanding balance owed thereunder ("Debt").

9. Mr. Lamontagne attempted to enter into a loan modification agreement with Defendant on six separate occasions, all of which were unsuccessful.

10. Finally, on or around July 12, 2019, Mr. Lamontagne entered into a loan modification agreement ("Modification") with Defendant. *See* **Exhibit A.**

11. Mr. Lamontagne and Defendant agreed in the Modification that Mr. Lamontagne's monthly installment payments towards the Mortgage were set at $1,217.04 beginning September 1, 2019, plus monthly escrow payments.

12. On or around September 4, 2019, Mr. Lamontagne made his first payment in the amount of $1,902.02 pursuant to the Modification, which was due on September 1, 2019.

13. In or around October of 2019, despite Mr. Lamontagne remitting every payment timely pursuant to the Modification, Defendant began improperly furnishing negative credit reporting information to the credit reporting agencies regarding Mr. Lamontagne and the Mortgage account.

14. Once Mr. Lamontagne realized that Defendant was furnishing negative credit reporting information to the credit reporting agencies, Mr. Lamontagne contacted Defendant and demanded that Defendant fix its inaccurate negative credit reporting.

15. In response to Mr. Lamontagne's demand, Defendant confirmed its credit reporting was in error and advised that their system was not equipped to process payments according to the Loan Modification until September 1, 2019, and that Mr. Lamontagne was to pay an additional payment towards the Mortgage to be current.

16. In one of Mr. Lamontagne's conversations with Defendant, Defendant advised Mr. Lamontagne that it would correct the negative credit reporting, but Defendant filed to ever correct its negative credit reporting.

17. Defendant thereafter continued to negatively report the Mortgage as 30 days delinquent to the credit reporting agencies, despite Mr. Lamontagne's timely payments and despite its promise to correct the negative credit reporting.

18. In October of 2019, Defendant also began placing calls to Mr. Lamontagne's cellular telephone number, 727-***-0000 ("Mr. Lamontagne's Cellular Telephone"), in attempts to collect the alleged Debt.

19. Mr. Lamontagne answered several of Defendant's calls and explained that he had made timely payments according to the Modification and demanded that Defendant stop calling him.

20. Defendant continued to place calls to Mr. Lamontagne's Cellular Telephone in attempts to collect the alleged Debt.

21. Defendant has called Mr. Lamontagne's Cellular Telephone at least one hundred (100) times during the period from October of 2019 to the present date.

22. Defendant has called Mr. Lamontagne's Cellular Telephone from several different telephone numbers, including, but not limited to 855-690-5900.

23. All of Defendant's calls to Mr. Lamontagne's Cellular Telephone were placed in an attempt to collect the alleged Debt.

24. On or around April 17, 2020, Defendant sent a collection letter representing that Mr. Lamontagne was delinquent on the Mortgage ("Collection Letter 1"). *See* **Exhibit B.**

25. Collection Letter 1 was directly addressed to Mr. Lamontagne, represented that "your loan is now one payment overdue," demanded payment of $1,906.76, and provided options to pay that included pay by phone or pay by online portal. **Exhibit B.**

26. Defendant's multiple misrepresentations regarding the Mortgage account caused Mr. Lamontagne confusion about what the status of his Mortgage was, how much he owed to bring his Mortgage current, and whether his Loan Modification was in place or not.

27. Defendant's multiple misrepresentations regarding the Mortgage account caused Mr. Lamontagne to fear that his home would go into foreclosure.

28. Defendant's communications in connection with the collection of the alleged Debt harassed Mr. Lamontagne due to the content, timing, and frequency of the communications.

29. Defendant's actions in connection with the collection of the alleged Debt caused Mr. Lamontagne to constantly worry about Defendant furnishing improper negative credit reporting regarding the Mortgage account to the credit reporting agencies.

30. Defendant's actions in connection with the collection of the alleged Debt caused Mr. Lamontagne to incur improper late fees allegedly owed under the Subject Account.

### *Count 1: Violation of the Telephone Consumer Protection Act*

31. Mr. Lamontagne re-alleges paragraphs 1-30 and incorporate the same herein by reference.

32. The Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227 (b) (1) prohibits any person:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

33. Mr. Lamontagne revoked consent for Defendant to call his Cellular Telephone by the use of an automatic telephone dialing system ("ATDS") or artificial voice or prerecorded message in or around October of 2019 when Mr. Lamontagne demanded that Defendant stop calling his Cellular Telephone.

34. Despite this revocation of consent, Defendant thereafter called Mr. Lamontagne's Cellular Telephone at least one hundred (100) times.

35. Defendant did not place any emergency calls to Mr. Lamontagne's Cellular Telephone.

36. and knowingly placed non-emergency calls to Mr. Lamontagne's Cellular Telephone.

37. Mr. Lamontagne knew that Defendant called Mr. Lamontagne's Cellular Telephone using an ATDS because he heard a pause when he answered at least one of the first few calls from Defendant on his Cellular Telephone before a live representative of Defendant came on the line.

38. Mr. Lamontagne knew that Defendant called Mr. Lamontagne's Cellular Telephone using a prerecorded voice because Defendant left Mr. Lamontagne at least one voicemail using a prerecorded voice.

39. Defendant used an ATDS when it placed at least one call to Mr. Lamontagne's Cellular Telephone.

40. Under information and belief, Defendant used an ATDS when it placed at least fifty calls to Mr. Lamontagne's Cellular Telephone.

41. Under information and belief, Defendant used an ATDS when it placed at least seventy-five calls to Mr. Lamontagne's Cellular Telephone.

42. Under information and belief, Defendant used an ATDS when it placed all calls to Mr. Lamontagne's Cellular Telephone.

43. At least one call that Defendant placed to Mr. Lamontagne's Cellular Telephone was made using a telephone dialing system that has the capacity to store telephone numbers to be called.

44. At least one call that Defendant placed to Mr. Lamontagne's Cellular Telephone was made using a telephone dialing system that has the capacity to produce telephone numbers to be called without human intervention.

45. At least one call that Defendant placed to Mr. Lamontagne's Cellular Telephone was made using a telephone dialing system that uses a random number generator.

46. At least one call that Defendant placed to Mr. Lamontagne's Cellular Telephone was made using a telephone dialing system that uses a sequential number generator.

47. At least one call that Defendant placed to Mr. Lamontagne's Cellular Telephone was made using a prerecorded voice.

48. Defendant has recorded at least one conversation with Mr. Lamontagne.

49. Defendant has recorded more than one conversation with Mr. Lamontagne.

50. Defendant has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message to place call individuals to collect alleged debts from said individuals, such as Mr. Lamontagne, for its financial gain.

51. Defendant has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message, and to place calls to individuals using such devices, just as it did to Mr. Lamontagne' Cellular Telephone, with no way for the called party and recipient of the calls to permit, elect, or invoke the removal of the

called party and recipient of the calls' cellular telephone number from Defendant's call list.

52. The structure of Defendant's corporate policies and/or procedures permits the continuation of calls to individuals like Mr. Lamontagne, despite individuals like Mr. Lamontagne revoking any consent that it may have to place such calls.

53. Defendant knowingly employs methods and has corporate policies and procedures that do not permit the cessation or suppression of calls placed using an ATDS to individual's cellular telephone, like the calls that it placed to Mr. Lamontagne's Cellular Telephone.

54. Defendant has corporate policies to abuse and harass consumers like Mr. Lamontagne.

55. Defendant been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

56. Defendant has been sued in federal court where the allegations include: calling an individual using an automated or prerecorded voice after the individual asked for the calls to stop.

57. Defendant's actions harmed Mr. Lamontagne by continuously causing him to worry about improper credit reporting.

58. Defendant's actions harmed Mr. Lamontagne by causing him to incur improper late fee charges.

59. Defendant's actions harmed Mr. Lamontagne by causing him extreme emotional distress.

60. Defendant's actions harmed Mr. Lamontagne by causing him embarrassment.

61. Defendant's actions harmed Mr. Lamontagne by causing him anxiety.

62. Defendant's actions harmed Mr. Lamontagne by being a nuisance and causing him aggravation.

63. Defendant's actions have damaged Mr. Lamontagne by harming him reputation, including his reputation for creditworthiness.

64. All conditions precedent to this action have occurred.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

   a. Awarding statutory damages as provided by 47 U.S.C. § 227 (b) (3) (B);

   b. Awarding Plaintiff costs;

   c. Ordering an injunction preventing further wrongful contact by the Defendant; and

   d. Any other and further relief as this Court deems just and equitable.

### *Count 2: Violation of the Florida Consumer Collection Practices Act ("FCCPA")*

65. Mr. Lamontagne re-alleges paragraphs 1-30 and incorporates the same herein by reference.

66. Defendant violated the FCCPA. Defendant's violations include, but are not limited to, the following:

   a. Defendant violated Fla. Stat. § 559.72(5) by willfully furnishing inaccurate information to the credit reporting

agencies that affected Mr. Lamontagne's reputation for creditworthiness when Defendant knew the information was false. Defendant's inaccurate credit reporting was done maliciously or with the willful intent to damage Mr. Lamontagne after Defendant reassured Mr. Lamontagne that Defendant would not report any additional inaccurate delinquencies, but continued to report such improper information anyway.

b. Defendant violated Fla. Stat. § 559.72(7) by willfully communicating with Mr. Lamontagne with such frequency as could reasonably be expected to harass Mr. Lamontagne where Defendant continued to call Mr. Lamontagne's Cellular Telephone multiple times per day after Mr. Lamontagne spoke with Defendant multiple times and demanded that Defendant stop contacting him multiple times.

c. Defendant violated Fla. Stat. § 559.72(9) by misrepresenting the right to apply late fees to the Mortgage when Defendant knew that Mr. Lamontagne was current on his payments towards the Mortgage.

d. Defendant violated Fla. Stat. § 559.72(9) by misrepresenting amounts owed under Mr. Lamontagne's

Mortgage 2 when Defendant knew Mr. Lamontagne's payments towards the Mortgage were current.

67. As a result of the above violations of the FCCPA, Mr. Lamontagne has been subjected to unwarranted and illegal collection activities and harassment for which he has been damaged.

68. Defendant's actions harmed Mr. Lamontagne by reducing his credit score improperly.

69. Defendant's actions harmed Mr. Lamontagne by continuously causing him to worry about the improper credit reporting harming his reputation for creditworthiness and his standing with creditors.

70. Defendant's actions harmed Mr. Lamontagne by causing him to incur improper late fee charges owed under the Mortgage.

71. Defendant's actions harmed Mr. Lamontagne by causing him extreme emotional distress.

72. Defendant's actions harmed Mr. Lamontagne by causing him embarrassment.

73. Defendant's actions harmed Mr. Lamontagne by causing him anxiety.

74. Defendant's actions harmed Mr. Lamontagne by being a nuisance and causing him aggravation.

75. Defendant's actions have damaged Mr. Lamontagne by harming his reputation, including his reputation for creditworthiness.

76. It has been necessary for Mr. Lamontagne to retain the undersigned counsel to prosecute the instant action, for which he is obligated to pay a reasonable attorney's fee.

77. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

   a. Awarding statutory damages as provided by Fla. Stat. § 559.77;

   b. Awarding punitive damages;

   c. Awarding actual damages;

   d. Awarding costs and attorneys' fees;

   e. Ordering an injunction preventing further wrongful contact by the Defendant; and

   f. Any other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, William Lamontagne, demands a trial by jury on all issues so triable.

Respectfully submitted this **September 29, 2020**,

                                              */s/ Kaelyn Steinkraus*
                                              Kaelyn Steinkraus, Esq.
                                              Florida Bar No. 125132
                                              kaelyn@attorneydebtfighters.com
                                              service@attorneydebtfighters.com
                                              Law Office of Michael A. Ziegler, P.L.
                                              Debt Fighters
                                              2561 Nursery Road, Suite A
                                              Clearwater, FL 33764
                                              (p)  (727) 538-4188
                                              (f)  (727) 362-4778
                                              *Attorney and Trial Counsel for Plaintiff*